1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEPHEN J. DOUGAN,

11              Petitioner,              No. MISC S-09-0052 FCD DAD

12        v.

13   UNITED STATES OF AMERICA,           FINDINGS AND RECOMMENDATIONS

14              Respondent.

15   _____/

16         Petitioner seeks to quash an Internal Revenue Service (IRS) summons pursuant to

17   26 U.S.C. § 7609(b)(2).  The case has been referred to the undersigned pursuant to Local Rule

18   72-302(c)(10), and the petition to quash has been fully briefed.

19                            BACKGROUND

20         Petitioner is a licensed attorney who practices personal injury law in California.

21   (Pet. (Doc. 1) ¶ 2.)  This action arises from an IRS audit of petitioner's tax returns for 2006 and

22   2007.  (Id.)  As part of the audit, IRS Revenue Agent Crystal Langston issued a summons on

23   May 13, 2009, to First Northern Bank, in Dixon, California, requiring the bank to produce

24   banking records for various accounts, including petitioner's client trust account.  (Id. ¶ 3, & Ex.

25   A.)  Petitioner seeks to quash the summons on three grounds:  (1) attorney-client privilege; (2)

26   relevancy; and (3) overbroad as to scope.  (Id. ¶¶ 2-4, 16 & 18.)

1

LEGAL STANDARD

The IRS is permitted to determine a person's tax liability by examining the person's documents, taking the person's testimony, and issuing summonses.  26 U.S.C. § 7602(a) (authorizing the IRS to issue summonses for the purposes of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability").  The powers granted to the IRS for determining tax liability are to be "liberally construed in recognition of the vital public purposes which they serve," and the restriction contained in 26 U.S.C. § 7605(b) against unnecessary examinations or investigations is "not to be read so broadly as to defeat them."  De Masters v. Arend, 313 F.2d 79, 87 (9th Cir. 1963).  See United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984) (noting "Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation") (emphasis in original); Speck v. United States, 59 F.3d 106, 108 (9th Cir. 1995) (citing the Supreme Court's recognition in Arthur Young & Co. that Congress granted the IRS "expansive information-gathering authority").

A taxpayer identified in an IRS summons served on a third party recordkeeper may bring a proceeding to quash the summons, and the government, in turn, may seek to compel compliance with the summons.[1]  26 U.S.C. § 7609(b)(2)(A).

> To defeat a petition to quash, . . . the government must establish that (1) the investigation will be conducted for a legitimate purpose; (2) the material being sought is relevant to that purpose; (3) the information sought is not already in the IRS's possession; and (4) the IRS complied with all the administrative steps required by the Internal Revenue Code.  See United States v. Powell, 379 U.S. 48, 57-58 (1964).  "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the Powell requirements have been met."  United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993).  The burden is

---

[1]  In the present case, respondent seeks denial of the petition to quash, rather than enforcement of the summons, because petitioner's bank has already produced the responsive documents to the IRS.  The documents produced have been set aside and have not been reviewed pending resolution of the pending petition to quash summons.  (Resp't's Opp'n to Pet. to Quash IRS Summons (Doc. 5) at 1.)

1  minimal "because the statute must be read broadly in order to
   ensure that the enforcement powers of the IRS are not unduly
2  restricted." <u>Liberty Fin. Servs. v. United States</u>, 778 F.2d 1390,
   1392 (9th Cir. 1985) . . . .
3
4          Once the government has established the <u>Powell</u> elements,
   "'those opposing enforcement of a summons . . . bear the burden to
   disprove the actual existence of a valid civil tax determination or
5  collection purpose by the Service . . . .  Without a doubt, this
   burden is a heavy one.'" <u>United States v. Jose</u>, 131 F.3d 1325,
6  1328 (9th Cir. 1997) (en banc) (quoting <u>LaSalle</u>, 437 U.S. at 316).
   As we observed in <u>Derr</u>, "[e]nforcement of a summons is generally
7  a summary proceeding to which a taxpayer has few defenses."
   <u>United States v. Derr</u>, 968 F.2d 943, 945 (9th Cir. 1992).  "'The
8  taxpayer must allege specific facts and evidence to support his
   allegations' of bad faith or improper purpose." <u>Jose</u>, 131 F.3d at
9  1328 (quoting <u>Liberty</u>, 778 F.2d at 1392).

10 <u>Crystal v. United States</u>, 172 F.3d 1141, 1143-44 (9th Cir. 1999) (parallel citations and footnote

11 omitted).

12                          RESPONDENT'S PRIMA FACIE CASE

13         In support of its prima facie case, respondent has provided a declaration by

14 Revenue Agent Crystal Langston.  Declarant is employed in the Small Business/Self-Employed

15 Division of the IRS and was assigned to examine the federal income tax returns of Stephen J.

16 Dougan for the 2006 and 2007 tax years.  (Resp't's Opp'n (Doc. No. 5), Langston Decl. ¶¶ 1-2.).

17 In furtherance of her examination, declarant issued a summons to First Northern Bank on May

18 13, 2009, and served the summons on that date.  (<u>Id.</u> ¶ 4.)  A notice of summons was sent to

19 petitioner.  (<u>Id.</u> ¶¶ 6-7.)  Declarant has received documents from First Northern Bank in response

20 to the summons but has segregated the documents and has not reviewed them.  (<u>Id.</u> ¶ 8.)

21         Declarant asserts that the examination of petitioner's returns is for the legitimate

22 purpose of determining petitioner's federal income tax liabilities for tax years 2006 and 2007 and

23 that the information and documents sought by the third-party summons will help her determine

24 petitioner's tax liabilities for the years specified.  (<u>Id.</u> ¶¶ 9-10.)  Declarant asserts further that,

25 except for the unreviewed documents produced by First Northern Bank in response to the

26 summons, the information and documents summonsed are not already in the possession of the

1   IRS.  (Id. ¶ 11.)  Declarant states that all administrative steps required by the Internal Revenue

2   Code for issuance and service of the summons were followed.  (Id. ¶ 12.)  Finally, declarant avers

3   that no Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect

4   to petitioner for the tax years under investigation.  (Id. ¶ 13.)

5           Revenue Agent Langston's declaration establishes that (1) the summons served on

6   First Northern Bank was issued solely for the legitimate purpose of determining petitioner's

7   federal income tax liabilities for tax years 2006 and 2007, (2) the bank records sought by the

8   summons might shed light upon the correctness of petitioner's tax returns and are therefore

9   relevant to the purpose of respondent's investigation, (3) the information and documents sought

10  by the summons were not already in the IRS's possession when the summons was issued and

11  have not been examined since they were produced by the bank, and (4) the administrative steps

12  required by the Internal Revenue Code were followed.

13          The court finds that respondent has established a prima facie case in support of the

14  summons issued to First Northern Bank and has therefore met the government's initial burden.

15  The burden shifts to petitioner to demonstrate that the summons should be quashed.

16          PETITIONER'S ARGUMENTS IN SUPPORT OF QUASHING SUMMONS

17          Petitioner argues first that the summons at issue seeks information that does not

18  meet the standard for relevancy because it includes the identities of petitioner's clients, who are

19  not the subjects of the audit.  Petitioner contends that his clients' identities are not relevant to the

20  accuracy of his tax returns.  (Pet. (Doc. No. 1) ¶¶ 2, 4, 9-10, 12-14.)

21          Petitioner argues second that the bank's production of the documents sought will

22  contravene the attorney-client privilege between petitioner and his clients as well as petitioner's

23  obligation under state law to preserve client confidences.  (Id. ¶¶ 3-4, 15-16, 19-34.)

24          Finally, petitioner argues that the summons is overbroad because it is not limited

25  to documents relevant to the tax years 2006 and 2007 and should be so limited.  (Id. ¶ 18.)

26  /////

4

ANALYSIS

I.  Overbroad Scope

The court turns first to petitioner's argument that the summons is overbroad because it is not limited to documents relevant to the tax years 2006 and 2007.  In opposition to this argument, respondent points out that the summons is in fact limited to the two tax years specified.  (Resp't's Opp'n (Doc. No. 5) at 4-5 & n.2.)  The copy of the summons attached to the petition to quash reveals that the applicable periods are identified as "YEAR ENDED DECEMBER 31, 2006 AND DECEMBER 31, 2007."  (Pet. (Doc. No. 1), Ex. A.)  The attachment to the summons identifies the same periods and begins "For the periods specified above, please furnish . . . ."  (Id.)  In reply to respondent's opposition, petitioner inexplicably asserts once more that the summons "is overbroad to the extent it seeks documents beyond the years subject of the examination."  (Pet'r's Reply (Doc. No. 6) at 2.)  Petitioner's argument in regard to overbroad scope lacks a factual basis and fails to establish a legal ground for quashing the summons.  His argument in this regard should therefore be rejected

II.  Relevance

The court turns next to petitioner's argument that his clients' identities are not relevant because his clients are not the subjects of the audit.  Petitioner's contention that his clients' identities are not relevant to the accuracy of his tax returns fails to apply the correct legal standard for relevance, i.e., relevance to the purpose of the examination.  See United States v. Powell, 379 U.S. 48, 57-58 (1964).  Congress has authorized the IRS to examine "any books, papers, records, or other data which may be relevant or material" to ascertaining the correctness of any return or determining the liability of any person for any internal revenue tax.  26 U.S.C. § 7602(a)(1).  Thus, information sought by summons is deemed relevant if it might throw light upon the correctness of the taxpayer's return.  David H. Tedder & Assocs., Inc. v. United States, 77 F.3d 1166, 1169 (9th Cir. 1996).  The "may be" language in § 7602(a)(1) "reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing

1   investigation," and "the Service can hardly be expected to know whether such data will in fact be

2   relevant until it is procured and scrutinized." <u>Arthur Young & Co.</u>, 465 U.S. at 814.  Another

3   formulation of the same standard is that the IRS must show that it has a realistic expectation

4   rather than an idle hope that something might be discovered from the information sought by

5   summons.  <u>Tedder</u>, 77 F.3d at 1169.

6          Here, petitioner provided the Revenue Agent with copies of documents from

7   which his clients' names were fully redacted.  (<u>See</u> Pet. ¶¶ 12-13; Pet'r's Decl. in Supp. of Reply

8   (Doc. No. 7), Ex. D.)  By petitioner's own admission, he was advised by the Revenue Agent that

9   she needed assurance that none of the checks were in fact payments to petitioner himself.  (Pet. ¶

10   14.)  Petitioner also admits that he was advised by the IRS to provide check copies "with the first

11   names of the clients unredacted."  (<u>Id.</u>)  If the IRS had an improper motive for seeking documents

12   containing the names of petitioner's clients, it is highly unlikely that the agent would have tried

13   to accommodate petitioner's confidentiality concerns by directing him to leave only the first

14   names of his clients unredacted.  Petitioner's description of his accounting system demonstrates

15   that without at least partial names on documents, the agent cannot track the moneys deposited

16   into petitioner's trust account as sums are removed from the account to pay for a client's

17   expenses, to reap petitioner's fees pursuant to his agreement with the client, and the remaining

18   settlement amounts ultimately disbursed to clients.  Without client-identifying information, the

19   IRS could not determine whether there are discrepancies between petitioner's records and his tax

20   returns.  Petitioner's refusal to leave even first names unredacted made it necessary for the

21   government to seek unredacted copies of petitioner's bank records in order to determine whether

22   petitioner accurately reported all of his income for the years under audit.

23          The information sought by the IRS pursuant to summons in this case is relevant

24   because the information may throw light upon the correctness of petitioner's returns and the IRS

25   has more than an idle hope that something may be discovered from the information produced.

26   The court finds that the banks record containing client's names are relevant to the purpose of

respondent's investigation.  Petitioner has failed to establish lack of relevance as a legal ground for quashing the summons.

III.  Privilege

The court turns finally to petitioner's argument that production of the documents sought will contravene the attorney-client privilege between petitioner and his clients as well as petitioner's obligation under state law to preserve client confidences.

IRS summonses are "subject to the traditional privileges and limitations," including the attorney-client privilege.  Upjohn Co. v. United States, 449 U.S. 383, 395-96, 398 (1981).  The burden of proving the protection of the attorney-client privilege applies to the documents at issue lies with the party attempting to invoke the privilege to resist enforcement of the summons.  Powell, 379 U.S. at 58.  The invoking party must prove to a reasonable certainty that the elements of an attorney-client privilege exist.  See Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).  It is federal common law, not state law, that governs whether information sought by the IRS is protected by the attorney-client privilege.  United States v. Blackman, 72 F.3d 1418, 1423 (9th Cir. 1995); Clarke, 974 F.2d at 129.

The attorney-client privilege protects only communication made in the course of seeking legal advice from a professional legal adviser in his or her capacity as such.  Olender v. United States, 210 F.2d 795, 806 (9th Cir. 1954).  "The purpose of the privilege is to encourage clients to make full disclosure to their attorneys."  Fisher v. United States, 425 U.S. 391, 403 (1976).  "Not all communications between an attorney and client are privileged," and Ninth Circuit courts "have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of work performed are usually not protected from disclosure by the attorney-client privilege."  Clarke, 974 F.2d at 129 (citing cases).  See also Reiserer v. United States, 479 F.3d 1160, 1165 (9th Cir. 2007) ("[T]he attorney-client privilege ordinarily protects neither a client's identity nor information regarding the fee arrangements reached with that client.") (quoting United States v. Horn, 976 F.2d 1314,

1317 (9th Cir. 1992)).  "Blanket assertions of the attorney-client privilege are extremely

disfavored.  Clarke, 974 F.2d at 129.  The privilege is ordinarily raised as to each record sought

to allow the court to rule with specificity.  Id.

Under certain circumstances, the district court may conduct an in camera

inspection of alleged confidential communications to determine whether the attorney-client

privilege applies to specific documents.  Kerr v. United States Dist. Ct. for N. Distr. of Cal., 426

U.S. 394, 405 (1976); Clarke, 974 F.2d at 129.  The privilege extends to cover the substance of

the client's confidential communications and the attorney's advice in response thereto.  In re

Fischel, 557 F.2d 209, 211 (9th Cir. 1977).  "Because the attorney-client privilege has the effect

of withholding relevant information from the factfinder, it is applied only when necessary to

achieve its limited purpose of encouraging full and frank disclosure by the client to his or her

attorney."  Clarke, 974 F.2d at 129.  See also Tornay v. United States, 840 F.2d 1424, 1426 (9th

Cir. 1988) ("We have said repeatedly . . . that fee information generally is not privileged.

Payment of fees is incidental to the attorney-client relationship, and does not usually involve

disclosure of confidential communications arising from the professional relationship.").

In the Ninth Circuit, "[i]t is well settled that there is no privilege between a bank

and a depositor."  Reiserer, 479 F.3d at 1165 (citing Harris v. United States, 413 F.3d 316, 319-

20 (9th Cir. 1969)).  In Harris, a case involving production of checks deposited into or withdrawn

from an attorney's trust account, the court explained that "[t]he reasons which led to the attorney-

client privilege, such as the aim of encouraging full disclosure in order to enable proper

representation, do not exist in the case of a bank and its depositor," and "the check is not a

confidential communication, as is the consultation between attorney and client."  Harris, 413

F.3d at 319-20.  Because the attorney-client privilege applies only where the communication

between attorney and client is confidential, and there is no such confidential communication

where a third party such as a bank either receives or generates the documents sought by the IRS,

there is no privilege protecting such documents.  Reiserer, 479 F.3d at 1165.

1      The bank records sought in this case do not constitute communications made

2  between petitioner's clients and petitioner in his capacity as a professional legal adviser in the

3  course of receiving or giving  legal advice.  Nor is there any showing that extending the attorney-

4  client privilege to such records would serve the purpose of encouraging clients to make full

5  disclosure to their attorneys.  Accordingly, the court finds that petitioner has not proved to a

6  reasonable certainty that the elements of an attorney-client privilege exist as to the bank records

7  sought by the IRS.  Petitioner has failed to carry the burden of proving that the protection of the

8  attorney-client privilege applies to the records and has therefore failed to establish privilege as a

9  legal ground for quashing the summons.

10                           CONCLUSION

11      For the reasons set forth above, IT IS RECOMMENDED that petitioner's petition

12  to quash IRS summons (Doc. No. 1) be denied in its entirety and this action be closed.

13      These findings and recommendations will be submitted to the United States

14  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

15  fourteen (14) days after this order is electronically filed and served on all parties, any party may

16  file and serve written objections with the court.  A document containing objections should be

17  titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to

18  objections shall be filed and served within seven (7) days after the objections are served.  The

19  parties are cautioned that failure to file objections within the specified time may, under certain

20  circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951

21  F.2d 1153 (9th Cir. 1991).

22  DATED: August 12, 2011.

23

24                                _Dale A. Drozd_____

25  DAD:kw                      DALE A. DROZD

      ddad1\orders.civil\dougan0052.petquash.f&r    UNITED STATES MAGISTRATE JUDGE

26